UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 20-65-DLB

EDWARD NELLSON                                                                                       PLAINTIFF

v.                            **MEMORANDUM OPINION AND ORDER**

FEDERAL BUREAU OF PRISONS, et al.                                               DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

Norbert Rosario, Bethany Mills, Mollie LeFever, Kathryn Arrington, David Spradlin, William Billiter, and Evan Norris, ("Defendants") have filed a Motion to Dismiss the Amended Complaint filed by Plaintiff Nellson. (Doc. # 60). Nellson has filed his Response to the Motion (Doc. # 62), to which Defendants have filed a Reply (Doc. # 64). Thus, the motion is now ripe for review. For the reasons stated below, Defendants' Motion to Dismiss is **granted**.

**I.      FACTUAL BACKGROUND**

Plaintiff Edward Nellson was incarcerated at USP Big Sandy from April 13, 2016 until December 2016. (Doc. # 52 ¶¶ 33, 78). Nellson alleges that during his stay at USP Big Sandy, he was denied medical care and repeatedly placed in solitary confinement, without a wheelchair, to punish him for not walking. (*Id.* at 1). Previously, in March 2016, Nellson allegedly fell from his bunk and suffered a severe spinal injury that rendered him unable to walk unassisted.[1] (*See id.*). Nellson alleges that Defendants failed to discover

---

[1] While most of the allegedly unconstitutional injuries occurred at USP Big Sandy, Nellson's original injury from falling from his bunk occurred at a different prison.

1

his injury while he was at USP Big Sandy because they believed he was "malingering, and faking his injury." (*Id.* at 2).

According to Plaintiff, Defendant Warden John Doe was the warden at all relevant times while Nellson was at USP Big Sandy. (*Id.* ¶ 4). Defendant Dr. Rosario was a physician at USP Big Sandy and provided medical care to Nellson. (*Id.* ¶ 5). Defendants Mills and Lefever were mental health providers at USP Big Sandy and were tasked with providing medical care to Nellson. (*Id.* ¶¶ 6-7). Defendants Billiter, Spradlin, and Arrington were also healthcare providers tasked with providing medical care to Nellson. (*Id.* ¶¶ 8-10). Lastly, Defendant Lt. Norris worked at USP Big Sandy in the Special Housing Unit ("SHU") during the time Nellson was incarcerated at the prison. (*Id.* ¶ 11; Ex. 12).

During his time at USP Big Sandy, Nellson was classified as a Care Level 2 ("Level 2") prisoner under the Bureau of Prison's ("BOP") classification system for medical and mental health conditions. (*Id.* ¶¶ 23, 29, 75). Level 2 prisoners are in stable condition and require clinical evaluations monthly to every six months. (*Id.* ¶ 29). Despite his classification, Nellson maintained that he should have been classified as a Care Level 4 ("Level 4") prisoner. (*Id.* ¶ 32). Level 4 prisoners must have such severely impaired functioning that they require constant skilled nursing care or assistance, such as a head injury. (*Id.* ¶ 31). After moving through other facilities, Nellson was eventually classified as a Level 4 prisoner. (*Id.* ¶ 110). Nellson alleges that despite his Level 4 re-classification, he remained at a Level 2 facility, which lacked adequate resources to care for him. (*Id.*).

Nellson brings his claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the judicially created analog to 42 U.S.C. § 1983 claims. (*Id.* at 28-30). First, Nellson alleges in Count I that Defendants knowingly violated Nellson's Eighth Amendment rights by allowing him to undergo pain and suffering without mitigating the harm by providing a wheelchair or walker. (*Id.* ¶ 116). In Count II, Nellson alleges that Dr. Rosario and John Doe Warden both condoned and ratified the conduct of Defendants. (*Id.* ¶¶ 119-20).[2]

## II. ANALYSIS

### A. Standard of Review

Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.*) (quoting *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss, a court should "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true." *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). However, "mere conclusory statements, do not suffice" and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-

---

[2]   Nellson also sought an injunction to order his transfer to a Level 4 facility. (*Id.* ¶ 122). The Court denied that motion. (Doc. # 47).

3

79. Although the statute of limitations is normally raised in a summary judgment motion, rather than a motion to dismiss, a court may dismiss if the limitations bar is evident from the complaint.  *See, e.g., Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014).

### B. Continuous Violation

Nellson argues in his Response that Defendants' misclassification of him as a Level 2 prisoner resulted in a continuous violation of his rights under the Eighth Amendment.[3]  (Doc. # 62 at 8).  A continuous violation exists "if (1) the defendants engage in continuing wrongful conduct; (2) the injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided."  *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (quoting *Hensley v. City of Columbus*, F.3d 693, 697 (6th Cir. 2009)).  A continuous violation occurs over several incidents that are not themselves actionable.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,114-15 (2002). However, when the events are discrete, easily identifiable, and separately actionable, there is no continuing violation.  *Id.*

Further, the Sixth Circuit uses the continuous violation doctrine "most commonly in Title VII cases, and rarely extends it to § 1983 actions."  *Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)).  A continuous violation is "occasioned by continual unlawful acts, not continual ill effects from an original violation."  *Eidson v. State of Tennessee Dep't of Children's*

---

[3]    While Plaintiff did originally allege a continuing violation theory, (*see* Doc. # 52 ¶¶ 5-11), the Amended Complaint only alleges that Defendants are responsible for the "misclassification and resultant below-standard medical attention that comes with said classification." (*Id.* ¶ 75). The Court will construe this in the light most favorable to Plaintiff and assume this is the basis for the argument made in Plaintiff's Response.

4

*Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted).  Passive inaction does not support a continuing violation theory.  *Id.* (citations omitted).  Nellson's continuous violation argument fails for two specific reasons discussed below.

First, this Court has declined to extend the continuous violation doctrine to § 1983 medical claims by prisoners.  *Nolan v. Daley*, No. 18-201-DLB, 2019 WL 2127296, at *2 (E.D. Ky. May 15, 2019).  In *Nolan*, a prisoner argued that denial of medical care by the defendant displayed deliberate indifference to the prisoner's medical needs.  *Id.* at *1.  Because the Sixth Circuit has declined to apply continuous violation doctrine to adequacy or denial of medical care in prison claims, this Court refused to extend the doctrine to Nolan's claims.  *Id.* at * 2.  Likewise, Nellson argues that his designation as a Level 2 prisoner constituted deliberate indifference and prevented him from being housed at a facility that would provide adequate care for his medical needs.  (Doc. # 62 at 7).  This Court still refuses to extend the continuing violation doctrine to this context as the Sixth Circuit primarily uses the doctrine for Title VII cases, not prisoner § 1983 claims.  *Katz*, 677 F. App'x at 236.  At most, Defendants' alleged failure to reclassify Nellson to Level 4 constitutes passive inaction rather than a continuous violation.  *Nolan*, 2019 WL 2127296, at *2 (noting that adhering to a prior refusal of medical care did not constitute new affirmative action that could support a continuing violation theory).

Second, even if this Court extended the doctrine to the case at hand, Plaintiff would still lose on the merits.  In his Amended Complaint, Nellson fails to allege that a violation of his rights occurred over several incidents that were not individually identifiable.  *See Morgan*, 536 U.S. at 114-15.  Nellson attributes very specific allegations and actions to each defendant.  (Doc. # 52 ¶¶ 33-74).  For example, Nellson argues that Dr. Rosario

withdrew his wheelchair and approved the placement of Nellson in solitary confinement as a punitive measure for his not walking. (*Id.* ¶ 36). Likewise, Nellson alleges that Defendant Billiter observed that he could not walk unassisted, failed to prescribe pain medication, and did not provide a walker or wheelchair. (*Id.* ¶ 41). Nellson has clearly attributed these specific incidents to individual defendants, which would constitute "discrete act[s]" that would not rise to the level of a continuing violation. *See Morgan*, 536 U.S. at 114-15.

The case law that Nellson relies on further proves the incongruency of his claim with continuous violation doctrine. First, Nellson relies on *Goldsmith v. Sharrett*, 614 F. App'x 824 (6th Cir. 2015), to argue that a prisoner must establish that the prison had a ban or policy that continuously violated their rights. (Doc. # 62 at 8). The prisoner in that case alleged a "series of discrete, easily identifiable incidents–i.e., individual seizures of his manuscripts followed by individual hearings." *Goldsmith*, 614 F. App'x at 828. Because the prisoner failed to allege facts to establish an outright ban on his ability to write, he failed to articulate a continuous violation claim. *Id.* Here, the prison did not have a policy or ban that effected Nellson, instead, there were individual actions taken by each defendant as to his condition and required care. (Doc. # 52 ¶¶ 33-74). Therefore, Nellson has failed to allege a continuous violation.

Furthermore, the other cases that Nellson relies on *do* establish an actual policy that effected the rights of the plaintiffs. *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (holding that every day that Resolution 91-87 remained in effect, plaintiff's rights were violated); *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1338 (M.D. Ala. 2019) (holding that plaintiffs who had to report their internet activity due to an

6

unconstitutional law had their rights violated each day they were subject to the law). Unlike the above cases, Nellson's Level 2 designation was not a policy, ban, or law. Rather, it was an individual determination of his medical status based on the recommendations in the Federal Bureau of Prisons' Clinical Guidance for *Care Level Classification for Medical and Mental Health Conditions or Disabilities.* (*See* Doc. # 52 ¶ 23; Ex. 4). The Level 2 designation itself was not a continual unlawful act and neither were the ill effects of his Level 2 designation. Nellson argues that the ill effects of his designation violated his rights because the designation prevented him from receiving adequate medical care for years. (Doc. # 62 at 9, 13). However, this is clearly impermissible under a continuous violation theory. S*ee Eidson*, 510 F.3d at 635 (citations omitted) (noting that a "continuing violation requires continual unlawful acts, not continual ill effects from an original violation.").

Accordingly, Nellson's assertion of a continuous violation of his Eighth Amendment rights is without merit.

### C. Statute of Limitations

Because Nellson's continuing violation argument fails, he must establish that the discrete acts of Defendants fall within the applicable statute of limitations period for his claim to proceed. *Green v. City of Southfield, Michigan*, 759 F. App'x 410, 415 (6th Cir. 2018) (citing *Bazemore v. Friday*, 478 U.S. 385, 394096 (1986)). *Bivens* claims ordinarily borrow the personal injury statute of limitations from the state where the claim arose. *See Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017). Where a state "has multiple personal-injury statutes with different limitations periods, courts use the statute of limitations applicable to residual or general personal injuries, not that for a particular

specific intentional tort." *Id.* Kentucky's general personal injury limitations statute requires that the action be commenced within one year after the cause of action accrued. Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) (noting that *Bivens* claims have a one-year statute of limitations under Kentucky law).

However, federal law governs *when* the claim accrues for the purpose of determining the applicable statute of limitations. *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001) (citation omitted). In the § 1983 context, the Supreme Court has stated that a claim accrues when the plaintiff has a complete cause of action. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). However, the Sixth Circuit has relied on the "discovery rule," which establishes that the "claim accrues when the plaintiff knows of, or should have known of, that cause of action." *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (citations omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Ruff*, 258 F.3d at 501 (quoting *Sevier v. Turner*, 140 S. Ct. 768, 777 (2020)).

Under a continuous violation theory, at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period. *Green*, 759 F. App'x at 415 (citations omitted). Thus, "limitations periods begin to run in response to discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts." *Id.* (citations omitted). The Sixth Circuit has "repeatedly rejected invocations of the continuing-violations defense that are mere reaffirmations of a previous act." *Z Technologies Corp. v. The Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014).

As discussed above, *supra* Section II.A., although the statute of limitations is normally raised in a summary judgment motion, rather than a motion to dismiss, a court

8

may dismiss if the limitations bar is evident from the complaint.  *Rembisz v. Lew,* 590 F. App'x at 504.

On May 12, 2016, Nellson filed a pro se *Bivens* complaint in this Court in Case No. 7:16-CV-ART, styled *Nellson v. Murry, et al.* ("*Nellson I*").[4]  His complaint named Defendants Rosario, Harrington, and two others not named in the current action.  *Nellson I*, 7:16-CV-ART (E.D. Ky.), ECF No. 1 at 1.  Further, Nellson's allegations were similar—claims of inadequate medical care for the alleged injury suffered on March 28, 2016.  *See id.* No. 1 at 1-7.  On March 15, 2017, the Court granted the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment because Nellson had failed to exhaust his administrative remedies prior to filing the action.  *See id.* No. 45 at 1-4.

Although the dismissal was without prejudice, the case did not toll the limitations period.  *See id.*; *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 457 (6th Cir. 2009) (noting that Sixth Circuit has consistently held that "a dismissal of a suit without prejudice usually does not toll the statute of limitations).  Nellson's original Complaint was filed on March 22, 2020.  (Doc. # 1).  His Amended Complaint was filed on November 11, 2020.  (Doc. # 52).  Nellson was designated to USP Big Sandy from April 13, 2016, to December 2016.  (*See id.* at ¶¶ 33, 78).

Since all the named defendants worked at USP Big Sandy, Nellson's claims cannot accrue later than December 2016, when the alleged continuous violations would have concluded.  *Green*, 759 F. App'x at 415.  Notably, the defendants cannot be held liable for actions that occurred after Nellson's transfer in 2016, including other facilities failing to change his Level 2 designation.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017)

---

[4]  A federal court may take judicial notice of proceedings in other courts of record.  *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir 1980).

(noting that *Bivens* claims cannot be brought against an individual official for the acts of others). Therefore, at the latest, Nellson would have had one year from December 2016 to file his action. Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d at 825.

And even if Nellson's exhaustion of administrative remedies tolled the statute of limitations, his claims would still be barred. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (noting that statute of limitations to prisoner's civil rights action was tolled during period which prisoner was exhausting state remedies). Nellson filed a Request for Administrative Remedy on June 5, 2016, which was denied on July 13, 2016. (Doc. # 52; Ex. 12). Nellson submitted appeals to both the Regional Director on July 20, 2016, and to the Central Office on August 2, 2016. *Nellson I*, 7:16-CV-ART (E.D. Ky.), ECF No. 26-2 ¶¶ 5-6. Both appeals were rejected, with the final rejection occurring at the Central office level on August 23, 2016, as Nellson failed to comply with the Remedy Program. (*Id.*). Therefore, Nellson's claim would have been tolled until August 23, 2016, and he would have had until August 23, 2017, to commence his action, not March 22, 2020. As a result, Nellson's Complaint filed on March 22, 2020, is not timely and the one-year statute of limitations bars his claims. (Doc. # 1).

Accordingly, it is **ORDERED** as follows:

(1)   Defendants' Motion to Dismiss the complaint (Doc. # 60) is **GRANTED**;

(2)   The Court will enter a Judgment in favor of Defendants concurrently herewith; and

(3)   This matter is **STRICKEN** from the active docket.

This 29th day of September, 2021.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\PikeCivil\2021\20-65 Order Granting MTD.docx